# IN THE COURT OF APPEALS OF IOWA

No. 20-1076
Filed November 30, 2020

**IN THE INTEREST OF E.R., Z.R., A.R., K.B., and K.B.,**
**Minor Children,**

**B.R., Mother,**
　　　Appellant.
_____


Appeal from the Iowa District Court for Warren County, Kevin Parker, District Associate Judge.


A mother appeals the juvenile court order terminating her parental rights to her five minor children. **AFFIRMED.**


Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Cathleen Siebrecht of Siebrecht Law Firm, Des Moines, attorney and guardian ad litem for minor children.


Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The mother appeals the juvenile court order terminating her parental rights to her five minor children, E.R., Z.R., A.R., K.B., and K.B.[1]  On appeal, the mother challenges the statutory grounds for termination and argues termination is not in the children's best interest.

## I.    Background

The mother and the four oldest children first came to the attention of the Iowa Department of Human Services (DHS) in June 2018, after the DHS received information that the mother allowed Zachary, the father of the two youngest children and a registered sex offender, to supervise the children.[2]  The DHS learned the mother and Zachary were involved in a domestic violence episode in June during which Zachary burned the mother's face with a lit cigarette.  That episode resulted in a no-contact order between the two.  In spite of the order, the mother repeatedly contacted Zachary and allowed him to supervise the children throughout that summer.  The four children were removed from the mother's care in late August.

The youngest of the five children involved in this case was born in May 2019.  The DHS was unaware of the child's birth until July because the mother had hidden the fact she was pregnant.  The DHS also learned that Zachary was the father and the mother had been having an ongoing relationship with Zachary despite her insistence earlier that she stopped having a relationship with him

---

[1] The juvenile court also terminated the parental rights of both the father of the three oldest children and the father of the two youngest children in the same proceeding.  Neither appeals.

[2] The youngest child, K.B., was not yet born at this time.

following the entry of the no-contact order. The DHS initially allowed the newborn to stay with the mother. While that child was in the mother's care, two more domestic violence attacks occurred in August. In the first, Zachary assaulted the mother and injured her right eye, resulting in assault charges being filed against him. The mother then reportedly left the child with Zachary. The second incident happened two days later when the mother returned to the home and was again assaulted by Zachary, leading to his arrest. The younger K.B. was then removed from the mother's care.

The State filed the petition to terminate the mother's parental rights in December 2019. Following hearings on January 7 and February 7, 2020, the juvenile court terminated the mother's parental rights to all five children. The mother appeals. She argues the children could have been returned to her care at the time of the termination hearing and termination is not in the children's best interest.

## II.      Standard of Review

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020) (per curiam). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* at 522–23 (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)).

## III.     Statutory Grounds

The juvenile court terminated the mother's parental rights to the three oldest children, E.R., Z.R., and A.R., under Iowa Code section 232.116(1)(f) and the two youngest children, K.B. and K.B., under Iowa Code section 232.116(1)(h). On appeal, the mother does not dispute the first three elements of either paragraph.

She only argues the State has not met its burden under the fourth element to show that the children could not be returned to her custody at the time of the termination hearing by clear and convincing evidence. *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

On our review, we agree with the juvenile court and find clear and convincing evidence supports the determination the children could not be returned to the mother's care at the time of the termination hearing. The mother was asked to address a number of concerns regarding housing stability, mental health, and her relationship with Zachary early in the proceedings. Unfortunately, those concerns remained largely unresolved at the time of the termination hearing.

Over the year and a half since the oldest four children were removed, the mother struggled to maintain housing and consistent employment. At various times during that period, she has been homeless, stayed with friends, or stayed with Zachary in violation of the no-contact order. The mother explained at the termination hearing that her difficulties with getting housing stemmed from an eviction years before but insisted she did not have financial difficulties caring for the children. The mother admitted, however, that the DHS repeatedly urged her to find housing and offered resources for her to do so, but she had not obtained housing at the time of the termination hearing.[3] Furthermore, she had told DHS she had secured housing during the case when in fact she had not.

---

[3] The mother testified she had made arrangements for housing to begin two days after the termination hearing.

The mother has further failed to make serious efforts to address her mental-health concerns. The mother has been diagnosed with severe depression and anxiety. She was expected to engage in therapy as part of the DHS recommendations to work towards reunification. In spite of being informed she would need to adequately address her mental-health issues before the children could be returned, her participation in therapy was sporadic, and she had only begun to attend therapy consistently again in the weeks before the termination hearing. These recent efforts, especially in light of the mother's prior inability to address her mental-health issues over the first years of this case, are not persuasive. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

Finally, and most troublingly, the mother has not appropriately addressed the domestic violence issues between her and Zachary that led to the oldest four children being removed in 2018 and the youngest child being removed in 2019. Her behavior over the course of the proceedings suggests she still struggles to place her and the children's needs above her relationship with Zachary. While the mother insisted at the termination hearing she had finally learned how to separate herself from Zachary and made other recent efforts to separate herself from him, these late efforts do not overcome the history of domestic violence between them. Additionally, the records shows that, after Zachary was incarcerated following the two assaults on the mother in August 2019, the mother called Zachary over one hundred times in the span of a month. She also sent him money during this time. At the same time, the children relied on clothing donations from shelters.

Taken together, this evidence leads us to conclude clear and convincing evidence supports the conclusion that the children could not be returned to the mother's custody at the time of the termination hearing. Therefore, the State met its burden of establishing the statutory elements for termination under Iowa Code section 232.116(1)(f)(4) for the three oldest children and section 232.116(1)(h)(4) for the two youngest children.

## IV. Best Interest

Having determined the statutory grounds for termination are met, the next step of the inquiry is to determine whether termination is in the children's best interest. *See Z.P.*, 948 N.W.2d at 525; Iowa Code § 232.116(2). In this inquiry, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Throughout these proceedings, the three oldest children have moved around multiple times between relative care, shelters, group homes, and foster care. All three children have developed behavioral issues, including engaging in attention-seeking behavior and aggression with other children at school. The two youngest children were removed when they were four and three months old, and they have spent most of their lives in foster care. All five children have been exposed to domestic violence when they lived with the mother. While it is true that the oldest two children have a bond with the mother and do not want her parental rights to them terminated, *see id.* § 232.116(3)(b), (c), that bond does not overcome the fact that the mother has been given ample time to address the issues giving rise to these proceedings and has failed to do so. The children have all

faced significant instability over the past year and a half, in large part due to the mother's own inability to provide a stable, nurturing environment for them and to place their needs and her own well-being above her relationship with Zachary. As such, we conclude termination is in the children's best interest.

**AFFIRMED.**